The next case for argument is Red River Freethinkers v. City of Fargo. I represent the Red River Freethinkers, the appellants in this matter. May it please the court, counsel? Freethinkers, is that a name or is it some sort of legal manifestation of who the Freethinkers are? It is the name of the organization. And is it a corporation or some similar thing where there's a document that describes it? I think they're a non-profit. I have to look back at our brief to see if there's a corporation statement filed on them. But I believe they're a non-profit corporation. There must have been one filed earlier on in the case. I believe they're a non-profit. Anyway, there are really, from our perspective, two main issues in this case. One is kind of an interesting and probably esoteric law of the case issue. And that involves whether the district court on remand followed the mandate of this court. And our contention is they essentially adopted the dissent and granted summary judgment without any further evidence being presented on the case. That issue has really been briefed pretty well, so I'm probably not going to talk about it too much unless there are questions about it. But the other issue is the main substantive issue, and that is granting summary judgment on the merits of the case that the district court did. Our contention is that we filed this lawsuit asking that the city remove the Ten Commandments monument after there had been a petition drive to, let me back up, the city had decided to remove the monument after the Freethinkers had suggested presenting their own monument. So the city had decided to remove the monument. There was a petition drive that was intended to save the monument that gathered the requisite number of signatures to put it on the ballot as an initiated measure under the city of Fargo ordinances. And then the city reversed itself and adopted that ordinance. And our contention is that they adopted the rationale of the petition drive group, which really we presented evidence of a religious motive there. And our problem with the district court ruling, and for that matter the dissent, is that they really didn't focus at all on the motives of the petition drive group. They focused on the actions of the city council after the petition was submitted. And as the city acknowledges in its brief in the statement of facts section, once that petition gathers the requisite number of signatures, the city has two options. One, it can set up an election and let it go to a vote. Two, it can adopt the proposed ordinance as proposed. It has no further legislative function. So our position is that the petition drive group really wrested the reins of government from the city council. They became the legislators in that instant through the initiated measure process. And the focus on the city council minutes and things that happened after the fact is really sort of irrelevant, because at that point the city council became, their functions were really ministerial and not legislative. So it was really the actions of the petition drive group that... Can the council also pick the date of the election? They probably could. Yeah, I'm sure they could. They could set up... So it's a little more ministerial, because some elections are more favorable than others. But importantly, they can't amend, they can't ignore or even debate the merits of it at that point. Now, before we get lost in the details, how long has this monument been there? How many years? It's been there since 1958. 58, so it's 56 years? Something like that. Yeah. Something like that. Is that accurate? Don't let me state it wrong. Well, 50... 50... Well, whatever the math is. 56. Yeah. I think it is 56 years. And of course, you know, you're very familiar with the Van Orden case. Of course. And I think the Van Orden case is saying to lower courts, if it's been there 40 years or more, don't mess with it. If it's one that pops up, then it's probably suspect. And counsel, do you think that's what the Supreme Court's telling us? And I understand where the city is coming from with the Van... It's the Supreme Court I'm referring to. Right. But that deals with a passive monument when there's nothing more. And in fact, that's the prior decision in this case, the Twomley case back in 2004 dealt with this specific monument and held that it was a passive monument and did not violate the Establishment Clause. So I mean, we can't question that. The issue in this case really has always been whether something happened to that monument after the fact that made it something more than just a passive monument. Being inactive. Yeah, because there's activity going on here to protect the monument. And that's really where the focus has to be. It's not on the actual monument itself, the passive aspect of the monument. That's been decided. You think under Justice Breyer's opinion, it has to become active some way? I guess a monument could talk or speak. They have such things, you know, they have recordings or gestures or something. This is not as ludicrous as it sounds. Well, I guess I didn't hear the first part of your question. Yeah, yeah, yeah. As you know, Justice Breyer's concurring opinion, which controls, talks about passive monuments. And so do you think a monument could become active? And then I made fun of myself a little bit, but it's half serious. If the monument started talking or showing a picture or moving or something like that. Certainly. I mean, all kinds of facts can make it an active monument. And what's really interesting here, too, is I think the city's attorney, in his recommendations as to what to do, he gave, when the city was first faced with this whole issue, he said, you have really four options here. And he said, the safest one is to remove the monument. So obviously the city was thinking, they were considering that there's certainly a religious dimension to it that can come into play based on what whatever they did or did not do with that monument. Of course, Justice Breyer says it can have a religious message and a secular message. Yes. That's his holding. Right. Key point. And I don't think that's not an issue as far as we're concerned in this case. Again, you know, we're not disputing that this was a pass, was declared to be a passive monument at one point. And what we're saying is that the monument has changed. And there was language in the Sumam case that talked about that, that a monument can change over time. And we're saying that that has happened here by the activities of this petition drive group. And that's the trigger that you contend caused that. Yes. I mean, I guess, you know, the way I see my job here is to get the focus back on this petition drive group, because if we just focus on what the city council did, I'm not sure we can show that they actually did anything incorrect. But as I said before, I don't think they had authority to do anything after this petition got the number of signatures. So it really was the petition drive group that we have to look at. And there's considerable evidence in the record that their motives were religious. That was the motivation for this whole petition drive. At least we're entitled to favorable inference as a fact on that. That shouldn't have been summary judgment in this matter. Does the city maintain this monument other than permitting it to stand on city hall property? I assume so. I mean, I see flowers growing around it all the time, but I mean, I think that is, I don't know if they do anything actively to, you know, polish it or, but it is on, it is in the city grounds. They mow the grass around there and do everything else to maintain the ground. So other than that, I don't know what kind of maintenance there would be required for it. I mean, I guess sometimes the arms fall off and things like that. And there aren't, you know, this is just two stone tablets and I saw, you know, I suppose if it fell apart, I don't know what would, what would become of it. So the essence of your argument is, I shouldn't say it is, is the essence of your argument that, that by not moving the monument in response to the petitioner's desires, the city ipso facto, is ipso facto change it from a passive monument to an active monument? Yes. And, and again, and, and by doing it, by not moving it, it imbued it, as I think opinion talked about, imbued it with a religious character that was not earlier had the religious character that the, the, the petition drive group ascribed to it. Because again, what we're, our position is they took control of the city government by, by passing this initiative, by putting this petition on and getting the 5,000 signatures they needed. They essentially took rain, took the reins of city government, of the legislative function away from the city council. And I, you know, I, our, our point is you can't sanitize that by just running it through the city council and having them adopt the, the, the ordinance as drafted. Well, what further step is out there in the universe that would cure this, if anything? I, we're asking that their monument be removed. I mean, that, that is the remedy we're asking for. Is there any language in the recent town of Grace opinion that might have an impact on this case? Well, I, that's a little bit different case, but I, I think there is some language in there talking about if, if, if, if the intent is to intimidate or coerce, and I, I guess our, I would argue that that, that there was an intimidating element to what the petition drive group was doing. I think they were intrigued by what Justice Kennedy said in part, offense does not equate to coercion. That sort of strikes that well, it's just awful about it ever in case as the second circuit held that, uh, and then in the case, the prayer constituted a steady drumbeat of Christian. But anyway, go on, well, that, and, and again, um, that is something that had a historical significance in a legislative body. And so that, I mean, it was, it's a completely different issue there, but, and I, I did read that case looking for something that would help us. And the only thing I can come up with is that if there is a coercive element to, uh, what's being done, it, it, it can run afoul of the establishment clause. I did want to save some time for rebuttal, so, so thank you. Mr. Baker, good morning. You may proceed. Good morning, Your Honor. May it please the court, counsel. My name is Jan Baker and along with the, with, uh, Katherine Swenson, we represent the city of Fargo in this matter. This court remanded this case to the district court to decide the following question, whether Fargo's actions after the district court's decision in Twombly v. City of Fargo transformed the Ten Commandments monument from a permissible display into an impermissible violation of the establishment clause. Under this court's en banc decision in ACLU Nebraska v. City of Plattsmouth, the constitutionality of a passive, longstanding monument is evaluated using the Supreme Court's decision in Van Orton and not the Lemon v. Kurtzman test. The district court correctly followed Van Orton and Plattsmouth and correctly held that the city's actions post-Twombly did not transform the monument into an unconstitutional one. Let me start out by addressing some of the questions that arose, um, during, uh, the questing of appellant. First, with regard to sumum, um, the city accepts that, at least in theory, the message conveyed by a monument may change over time, to use the Supreme Court's phrase, from that free establishment clause case. And although this court's previous decision regarding standing hypothesized that a government might, by subsequent action, transform a formerly permissive display into an impermissible one, on remand the freethinkers still needed to convince the district court that a trier of fact could conclude on this record that this monument was transformed by these intervening events into the type of monument that would fail the tests set forth in Van Orton and Plattsmouth. Now, to the question, I believe from Judge Benton, about whether or not there's an example of a way in which a monument's meaning could be transformed, um, perfect example, Staley v. Harris County, Texas. Um, since 1956, there had been a monument, uh, on courthouse grounds in honor of a philanthropist named Mosier. One of its original elements was a Bible, but sometime in the 1930s, excuse me, 1980s, the Bible was removed from the display. Then a gentleman named Devine ran for judge, and part of his campaign was restoring the monument. And when he was elected, Judge Devine refurbished the monument. He not only put the Bible back into the display, but he changed it physically further to put a neon border around the Bible, and the refurbishment was accompanied by a ceremony in which several religious leaders spoke about the importance of the Bible. So they did this in a way that permanently called attention to the Christian aspect of the monument. We don't have any... And how long until it was challenged? How long did it stay there with the neon and all that? Uh, well... Days? I mean, days? No, that's, uh... Days or months? Short time? I believe, well, Judge Devine was elected in the 1990s, and this is a 2006 decision. So a number of years, it seems. What do you think was actually years before it was challenged? I believe so. It wasn't 40 years, though. It wasn't 40 years. And in this case, as Judge Erickson noted in the Twombly decision, aside from an objection raised over 40 years before that decision in 2005, there was no objection to this monument prior to the Freethinkers' lawsuit in this case. So I want to address the choice of the test, and then the application of that test, and if time permits, I'd like to address whether the district court was required to defer ruling until a later point. What evidence is there in the record that indicates that there was no contest about putting the monument up? What's in the record here, other than the fact that it's still there today? This issue was litigated in Twombly v. City of Fargo, and there is a... Near the end of the decision, Judge Erickson, as part of the application of the Van Orten test, gets to the question of whether it stood without controversy, and as part of the question of whether it stood without controversy, he identified that one of the plaintiffs in the Twombly case had objected to the judge who presided in 1961 when the monument was taken out of storage and put on the mall, and had objected over 40 years ago to the Ten Commandments monument. And so what I'm relying upon is that unappealed adjudication in the Twombly case. Forty years ago. Forty years ago. That's correct. Is that Truman? Is that Truman's complaint? Yes. I think that's the name. Thank you, Your Honor. At the end of the case. Yes. Yes. Now, in Van Orten, both Justice Rehnquist's plurality opinion and Breyer's concurrence explicitly rejected application of the Lemon test to passive monuments. Then two months later, when sitting on Bonk in the Platt-Smith case, this court said, taking our cue from Chief Justice Rehnquist's opinion for the court and Justice Breyer's concurrence in Van Orten, we do not apply the Lemon test. Now, the Platt-Smith case also declined to follow the approach that was taken in the Companion case of McCreary v. ACLU of Kentucky, decided the same day as Van Orten. That display was not a passive one. Instead, it was an evolving display, a third strike, so to speak, after the first two efforts to put a display in the courthouse had been declared unconstitutional. That reflected the county's expressed desire to display a religious document. Now, the Fargo monument continues to satisfy the Van Orten Platt-Smith test. The city's adoption of the ordinance in July 2007 prohibiting itself from removing a marker or monument that had been in place in the city for more than 40 years, and the motion adopted six weeks later to not accept additional monuments on the Mall, didn't alter the fundamental similarities between the Fargo monument and those in Van Orten and in Platt-Smith. None of them resulted in any physical change to the monument. The inscription, including the references to the city's first urban renewal project and to the economic future of the city, continued to be there. It continued, therefore, to convey a clear secular message concurrently with the Ten Commandments. Secondly, the monument's history was not erased by the post-Twombly events, and the physical setting of the monument stayed exactly the same. And by the way, to go to Judge By's question with regard to maintenance, also in the Twombly case on page 985, Judge Erickson indicated that although the city maintains the Mall area, no funds are earmarked for the monument's care. And so, as Your Honor may know, it's where a number of sidewalks converge, and it's in the middle of that area. They certainly shovel the snow from the sidewalks and don't neglect that part of the Mall that where the monument is, nevertheless, there's no funds earmarked for the maintenance of the monument. But, I mean, you can't expect the City of Fargo to have such an elaborate accounting program that they have a nice little box over here for just this one and other monuments that may be around the community or other things unrelated to monuments. It isn't that sophisticated, is it? No, nor is a monument something that requires a significant amount of maintenance. It just really sits there. And other than needing to have the area around the monument be something that is safe for people to walk by, there wouldn't really need to be much, if anything, set aside for the maintenance of it in the first place. Would cutting of the grass at or nearby the monument qualify as something maintenance-wise? It would not be a legally significant question under either the Van Orten analysis or under Platt-Smith. Certainly, in Platt-Smith, the City of Platt-Smith maintained Memorial Park, which was where that monument was. There was no suggestion, nothing in the Court's decision that indicated in that matter that the grass by the monument that was upheld in that case was privately maintained. So the question of maintenance is one that has become either relatively insignificant or completely insignificant with regard to passive monuments after those two cases. Let me also sort of note before you leave, I don't see in the Twombly facts who owns the monument. Judge Erickson or no one has ever said who really owns it. That's often mentioned conspicuously in these cases as to who really owns the thing. It was given by the Eagles and whoever to somebody. Has there ever been a determination of who owns the monument? We're willing to assume, certainly for purposes of summary judgment, that since this was clearly a monument that was given to the City, that the City must be the one who owns it. But he doesn't make a finding on that, does he? I just looked down there. I don't recall that. I believe we said in our brief, I think, that we think we own it. It's larger there, isn't it, because of a fraternal organization in the community that it passed it on to the City of Oregon. Isn't that really the real history of this? The history of this monument and the Van Orten Monument and the Platt-Smith Monument and many around the country was that the Eagles organization, through funding provided by a legend by Cecil B. DeMille, in conjunction with the release of the Ten Commandments, that's not in the record in this case, but I believe it's in the record in Van Orten, donated these monuments to the City of Fargo and to the other cities as well, which is another reason why this is on all fours with regard to Platt-Smith and Van Orten. The indication was made during Plaintiff's argument that the City didn't amount face. The City Commission consistently supported retaining the monument at its current location except for a brief period in which the City Commission, responding to a maneuver by the Plaintiff, took a preliminary step toward donating the monument to a location on private property. But what's important is that the City's exploratory steps toward moving the monument don't support the conclusion that the monument's message became sectarian or transformed it into an endorsement of religion. With regard to the argument we've heard this morning, that because this involves an initiative in referendum, that somehow the City's role as ministerial, that's not even close to the circumstances, nor is it an aspect that is a significant fact under the governing cases of Van Orten and Platt-Smith. Well, as your opponent said, the petitioners took the reins of government away from the City Council. That's what initiative and referendum is all about. Well, the options available... As Judge Spierickson pointed out, the City decided to follow the will of the majority, which I guess under our democratic form of government is okay, on many things at least. To go to the question of exactly how this operates, when an initiative is the subject of a petition is then presented to the City Commission. The City obviously has the option to vote not to adopt it, but if the initiative is otherwise compliant with that part of the City Charter, it can then go on the ballot, and in that situation there's nothing precluding the City commissioners from speaking out against it. And the record about what actually happened here, which really ought to govern the merits of the case, as opposed to hypothetical paths that were not taken, what actually happened here is that the City commissioners adopted the ordinance as their own. As Judge Erickson correctly identified, none of the opinions expressed by the commissioners were sectarian in any respect. And while there is the reference to will of the people, we certainly don't read either the judge's identification of that or the commissioner's identification of that as an indication that an otherwise unconstitutional monument could become constitutional if it reflects the will of the people. So in terms of the application of the test here, once you recognize, as this Court already has, that Lemon doesn't apply, that instead Van Orten and Platt Smith do, and that whatever occurred in the meantime wasn't a change to the facts that are legally significant under Van Orten, the context, the message, or the history, then it follows from that that the monument was not transformed into one that would be deemed unconstitutional under the circumstances. And so to summarize, the District Court followed this Court's mandate. This Court, by the way, did not instruct the District Court to defer a ruling on the merits. This Court did not implicitly conclude that there was merit to the plaintiff's claim.  The District Court correctly determined that the City's post-Twombly actions didn't transform the monument into one that's unconstitutional, and so that ruling should be affirmed. And unless the Court has further questions, I'll sit down. Thank you. Thank you. Just to respond briefly to issues regarding the passive nature of the monument, I guess I would submit that, well, first of all, it's true that the monument stood there for 40 years without much controversy, but the fact remains, over the last 10 years, there's been at least two lawsuits over it, and a lot of the City Council wrangling that took place during the whole time that freethinkers were trying to donate their own monument. So there has been controversy with this monument, and, you know, I guess my point is that history did not stop at Twombly. Twombly just declared at that time the monument was a passive monument, similar to Van Orden, but things have happened since that time, our position is that have changed the nature of that monument, and controversy itself can change the nature. If there's controversy now that there wasn't there before, why can't that change the message that's conveyed by the monument? Because people are bringing to light things that someone didn't bring up before, or whatever, but that can change. It doesn't have to be a physical change, necessarily. It can be acts that are taking place around that monument, so that's our position. There has been a significant change in the nature of that monument, and what it represents. Not a physical change in the monument itself, but a physical change in what it represents because of the actions that have taken place since Twombly, and so that's why we're here. The council mentioned that in the initiated measure process, the city council members are, they can speak out against it, well that's probably true, but they're speaking as individual citizens. They're not, they have no official legislative function at that point. They could adopt a resolution, but proceed. They could adopt a resolution, but if, right, that's, again, whether you call that on a ministerial function or whatever it is, it is not a true legislative function any longer because that has been, as I said, wrested away from them. Why is it not permissible for a court to view the action that the city council took here as a strictly pragmatic decision, devoid of religious connotations? We just don't want any more trouble. That which was permissible before all this started is still permissible. I don't know what they think in those legal terms, if in fact those are legal terms. Because as I said before, you can't sanitize the motives of the petition drive committee by just running it through the city council and having them say, well, okay, we're just going to get rid of the controversy by adopting the ordinance and moving on to something else. And that's essentially what they, I think that's what they were trying to do here. I don't dispute that. I think they were trying to get rid of the controversy, obviously. But our argument is that you can't, again, you can't just sanitize what the actual legislative act was and the motives behind the legislative act. I mean, it really begs the question, what is the legislative intent behind an initiated measure? And you really have to look at what happened to bring that measure to the floor. In other words, at base, your argument says, when you use the word sanitize, that whether they thought they were doing so or not, the city council, by responding to the will of the petitioners, as it were, incorporated the religious views of the petitioners. Yeah, I mean, they had no choice. They had no choice. I see my time is up. Well, we thank both sides for the argument. Thank you. The case is submitted.